*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| TONI 1 TRUST, by its Trustee DONALD TANGWALL, | Supreme Court No. S-16153 |
| Appellant, | Superior Court No. 4FA-15-01603 CI |
| v. | O P I N I O N |
| BARBARA WACKER, individually and jointly and severally, WILLIAM WACKER, individually and jointly and severally, and LARRY D. COMPTON, Bankruptcy Trustee, individually and jointly and severally, | No. 7228 – March 2, 2018 |
| Appellees. | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: S. Jason Crawford, Layton, Utah, for Appellant. Erik LeRoy, Erik LeRoy P.C., Anchorage, for Appellees Wacker. Cabot Christianson, Law Offices of Cabot Christianson, P.C., Anchorage, for Appellee Compton.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

# I.    INTRODUCTION

After a Montana state court issued a series of judgments against Donald Tangwall and his family, the family members transferred two pieces of property to the "Toni 1 Trust," a trust allegedly created under Alaska law.  A Montana state court and an Alaska bankruptcy court found that the transfers were made to avoid the judgments and were therefore fraudulent.  Tangwall, the trustee of the Trust, then filed this suit, arguing that Alaska state courts have exclusive jurisdiction over such fraudulent transfer actions under AS 34.40.110(k).  But we conclude that this statute cannot unilaterally deprive other state and federal courts of jurisdiction.  We therefore affirm the superior court's judgment dismissing Tangwall's complaint.

# II.    FACTS AND PROCEEDINGS

In 2007 Donald Tangwall sued William and Barbara Wacker in Montana state court.  The Wackers counterclaimed against Tangwall; his wife, Barbara Tangwall; his mother-in-law, Margaret "Toni" Bertran; and several trusts and businesses owned or run by the family.  In the ensuing years, several default judgments were entered against Tangwall and his family.

In 2010, before the last of these judgments was issued, Bertran and Barbara Tangwall transferred parcels of real property to an Alaska trust called the "Toni 1 Trust" (the Trust).[1]  The Wackers filed a fraudulent transfer action under Montana law in Montana state court, alleging that the transfers were made to avoid the judgments.

---

[1]    The appellees argue that (1) the Trust is not an Alaska trust at all and (2) even if it is, the Trust is not subject to the Alaska statute because it was not created in compliance with applicable statutory requirements.  The superior court did not resolve these factual questions, and we assume, without deciding, that the Trust is an Alaska trust subject to AS 34.40.110.

Default judgments in the fraudulent transfer action were entered against Barbara Tangwall, the Toni 1 Trust, and Bertran.

After the fraudulent transfer judgments were issued, the Wackers purchased Barbara Tangwall's interest in one of the parcels at a sheriff's sale, as part satisfaction of their judgment against Tangwall and family. But before they could purchase the remaining half interest, Bertran filed for Chapter 7 bankruptcy in Alaska. Her interest in the trust property was therefore subject to the jurisdiction of a federal bankruptcy court.

In December 2012, Donald Tangwall, as trustee of the Trust, filed a complaint in the bankruptcy court against the Wackers and bankruptcy trustee Larry Compton. Among other things, Tangwall alleged that service on the Trust in the Montana fraudulent transfer action was defective, rendering the judgment against the Trust void. Rather than litigate whether service in Montana was proper, Compton elected to bring a fraudulent transfer claim against Tangwall under the federal bankruptcy fraudulent transfer statute. A default judgment in Compton's action was entered against Tangwall. His appeals from this judgment were dismissed.

Tangwall next sought relief in Alaska state court, where he filed the complaint that led to this appeal. The crux of his argument was that AS 34.40.110 grants Alaska courts exclusive jurisdiction over any fraudulent transfer actions against the Trust.[2] Specifically, he argued that the Trust contains a provision restricting the transfer

---

[2]     Tangwall argued that AS 13.36.035(f) had a similar effect. However, AS 13.36.035 concerns the internal affairs of trusts, including "the administration and distribution of trusts, the declaration of rights, and the determination of other matters involving trustees and beneficiaries of trusts." AS 13.36.035(a). The judgments that Tangwall seeks to avoid concern fraudulent transfers, not the internal affairs or management of the Trust. We conclude that AS 13.36.035 does not apply to this case,
(continued...)

of the beneficiary's interest, and that AS 34.40.110(k) grants Alaska courts "exclusive jurisdiction over an action brought under a cause of action or claim for relief that is based on a transfer of property to a trust" containing such transfer restrictions. On this basis, Tangwall sought a declaratory judgment stating that all judgments against the Trust from other jurisdictions are void and that no future actions can be maintained against the Trust because the statute of limitations has run.[3]

The superior court dismissed the complaint, and Tangwall appeals. Most of Tangwall's arguments on appeal are supported by little or no citation to relevant legal authority and are therefore waived.[4] However, he has preserved his argument that the state and federal judgments against the Trust are void for lack of subject matter jurisdiction under AS 34.40.110(k). While reviewing this appeal, we requested supplemental briefing on the question whether state or federal courts are required to follow a statute that purports to retain exclusive jurisdiction over a fraudulent conveyance action.[5]

---

[2]    (...continued) and we decline to address it further.

[3]    Tangwall's complaint also included two "harassment" claims. These claims have not been preserved on appeal.

[4]    *Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015).

[5]    *See Toni 1 Trust v. Wacker*, No. S-16153 (Alaska Supreme Court Order, July 13, 2017). This case, and the issue referred to the parties, arguably implicates the constitutionality of AS 34.40.110. Thus, pursuant to Alaska Appellate Rule 514(e), we also notified the Attorney General of Alaska of the case and invited supplemental briefing from the State. *Id.* Tangwall and Compton filed supplemental briefs; the Wackers and the State did not.

## III.  DISCUSSION

We review an order granting a motion to dismiss for a failure to state a claim de novo.[6] We presume all factual allegations in the complaint to be true, and draw all reasonable inferences in favor of the non-moving party.[7]

**A.    Alaska Statute 34.40.110(k) Purports To Grant Alaska Courts Exclusive Jurisdiction Over Fraudulent Transfer Actions Against The Trust.**

Alaska Statute 34.40.110 governs Alaska trusts containing a "transfer restriction" — a provision stating that trust property may not be transferred before payment or delivery of the property to the beneficiary of the trust.[8] The statute provides that these restrictions, which allow for the creation of so-called "self-settled spendthrift trusts,"[9] are generally enforceable.[10] However, subsection (b)(1) creates a limited cause of action for fraudulent transfers:  a creditor of the settlor of the trust can reach trust property if the creditor can prove that the settlor's transfer of property to the trust "was made with the intent to defraud that creditor."[11]

---

[6]      *Kollodge v. State*, 757 P.2d 1024, 1026 n.4 (Alaska 1988).

[7]      *Id.* at 1026; *see also Linck v. Barokas & Martin*, 667 P.2d 171, 173 (Alaska 1983).

[8]      AS 34.40.110(a).

[9]      *See* Jeremy M. Veit, *Self-Settled Spendthrift Trusts and the Alaska Trust Act:  Has Alaska Moved Offshore?*, 16 ALASKA L. REV. 269, 279-81 (1999).

[10]      *See* AS 34.40.110(b) ("If a trust contains a transfer restriction . . . , the transfer restriction prevents a creditor existing when the trust is created . . . from satisfying a claim out of the beneficiary's interest in the trust . . . .").

[11]      AS 34.40.110(b)(1).  Creditors must also satisfy additional criteria enumerated in AS 34.40.110(d).

Alaska Statute 34.40.110(k) enumerates two additional limits on fraudulent transfer claims. First, an action "may not be brought . . . for an attachment or other provisional remedy against property of a trust subject to this section or to avoid a transfer of property to a trust that is the subject of this section unless the action is brought under (b)(1) of this section."[12] In other words, the (b)(1) fraudulent transfer cause of action is the exclusive means by which a litigant can prevent a transfer of or reach property in an Alaska self-settled spendthrift trust. Second, the statute provides that Alaska courts have "exclusive jurisdiction over an action brought under a cause of action or claim for relief that is based on a transfer of property to a [self-settled spendthrift] trust" — a class that obviously includes fraudulent transfer actions.[13] This second limit, Tangwall claims, deprived the bankruptcy court and the Montana court of jurisdiction.

Tangwall's argument is not frivolous. He is correct that a judgment is void if the court that entered the judgment lacked subject matter jurisdiction over the case.[14] Furthermore, AS 34.40.110(k) purports to grant Alaska courts exclusive jurisdiction over fraudulent transfer claims against Alaska self-settled spendthrift trusts. And having reviewed the legislative history of AS 34.40.110(k), we have no doubt the Alaska legislature's purpose in enacting that statute was to prevent other state and federal courts

---

[12]    AS 34.40.110(k).

[13]    *Id.*

[14]    *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 891 (Alaska 2013).

from exercising subject matter jurisdiction over fraudulent transfer actions against such trusts.[15] The question, however, is whether AS 34.40.110(k) can achieve that intended result. We conclude that it cannot.

**B.      Alaska Statute 34.40.110(k) Cannot Limit The Scope Of Other States' Jurisdiction.**

More than 100 years ago, the United States Supreme Court held that

> [e]ach state may, subject to the restrictions of the Federal Constitution, determine the limits of the jurisdiction of its courts, the character of the controversies which shall be heard in them, and, specifically, how far it will, having jurisdiction of the parties, entertain in its courts transitory actions where the cause of action has arisen outside its borders.[16]

And just a few years later, the Court held that states are not constitutionally compelled to acquiesce to sister states' attempts to circumscribe their jurisdiction over such actions.[17]

This latter rule arose from a case much like the one before us now. An employee sued his employer in a Georgia court, relying on an Alabama statutory cause of action; his employer countered that Alabama state courts retained exclusive jurisdiction over the suit under the Alabama Code, and that the Full Faith and Credit Clause compelled Georgia courts to respect Alabama's assertion of exclusive

---

[15]     *See* Minutes, House Jud. Comm. Hearing on S.B. 344, 23d Leg., 2d Sess. (Apr. 14, 2004), http://www.legis.state.ak.us/pdf/23/M/HJUD2004-04-141345.PDF (comment from David G. Shaftel, Attorney at Law, explaining that the purpose of the provision is to require a fraudulent transfer action against an Alaska trust to be brought in Alaska court).

[16]     *St. Louis, Iron Mountain & S. Ry. Co. v. Taylor*, 210 U.S. 281, 285 (1908).

[17]     *See Tenn. Coal, Iron, & R.R. Co. v. George*, 233 U.S. 354, 360 (1914).

jurisdiction.[18]  The Supreme Court found that "Full Faith and Credit" does not require states to go quite so far.  Instead, "jurisdiction is to be determined by the law of the court's creation, and cannot be defeated by the extraterritorial operation of a statute of another state, even though it created the right of action."[19]

Alaska Statute 34.40.110(k) crosses the limit recognized by *Tennessee Coal*:  it purports to grant Alaska courts exclusive jurisdiction over a type of transitory action against Alaska trusts.[20]  We acknowledge that the analogy is imperfect; the Montana court's judgment against Tangwall was based not on a fraudulent transfer cause of action created by an Alaska statute, but rather on a cause of action arising under Montana law relating to an Alaska trust.[21]  Nevertheless, *Tennessee Coal* controls.  The

---

[18]  *Id.* at 358.  The Full Faith and Credit Clause requires states to give "Full Faith and Credit" to "the public Acts, Records and judicial Proceedings of every other State."  U.S. Const. art. IV, § 1.

[19]  *Tenn. Coal*, 233 U.S. at 360.

[20]  "If the transaction on which [an] action is founded could have taken place anywhere, the action is generally regarded as transitory; but if the transaction could only have happened in a particular place . . . the action is local."  *Action*, BLACK'S LAW DICTIONARY (10th ed. 2014) (omission in original) (quoting 92 C.J.S. *Venue* § 8 (1955)).  Fraudulent transfer actions are founded on a fraudulent transfer of property, which can take place anywhere even if the property being transferred is immovable.  *See, e.g.*, *Tcherepnin v. Franz*, 439 F. Supp. 1340, 1345-46 (N.D. Ill. 1977) ("In Illinois, an action to set aside a fraudulent conveyance . . . [is] a transitory action properly cognizable wherever jurisdiction can be obtained over the defendant.").

[21]  Mont. Code Ann. § 31-2-326 to -342, (outlining provisions of Montana's Uniform Fraudulent Transfer Act).  Tangwall could have argued that the first sentence of AS 34.40.110(k) makes the cause of action created in AS 34.40.110(b)(1) the exclusive means of attaching Trust property; he may have attempted to do so in his supplemental brief.  In any case, an Alaska statute cannot prevent Montana courts from applying Montana fraudulent transfer law.  *See Pac. Emp'rs Ins. Co. v. Indus. Accident*
(continued...)

*Tennessee Coal* court held that the Full Faith and Credit Clause does not compel states to follow another state's statute claiming exclusive jurisdiction over suits based on a cause of action "*even though* [the other state] created the right of action."[22] The clear implication is that the constitutional argument rejected in *Tennessee Coal* would be even less compelling were a state to assert exclusive jurisdiction over suits based on a cause of action it did *not* create.

In seeking to void the Montana court's judgment for lack of jurisdiction, Tangwall effectively argues that AS 34.40.110(k) can deprive Montana courts of jurisdiction over cases arising under Montana law. This is simply a more extreme interpretation of the "full faith and credit" principle than the interpretation considered and rejected in *Tennessee Coal*.[23]

We acknowledge that the Alaska legislature's attempt to grant Alaska courts exclusive jurisdiction over a class of claims in some circumstances is hardly unique.[24] And we acknowledge that several of our sister states have concluded that

---

[21] (...continued)
*Comm'n of Cal.*, 306 U.S. 493, 502 (1939) ("[T]he full faith and credit clause does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state, even though that statute is of controlling force in the courts of the state of its enactment with respect to the same persons and events.").

[22] *Tenn. Coal*, 233 U.S. at 360 (emphasis added).

[23] Other courts that have considered attempts to assert exclusive jurisdiction over a broad class of claims have reached the same conclusion. *See, e.g.*, *Marine Midland Bank v. United Mo. Bank*, 643 N.Y.S.2d 528, 531 (N.Y. App. Div. 1996) ("Nor can we accept defendant's argument that the courts of this State are divested of subject matter jurisdiction by [a Kansas statute that] grants the Kansas probate court exclusive jurisdiction over all controversies involving Kansas estates.").

[24] *See generally* Verity Winship, *Bargaining for Exclusive State Court*
(continued...)

similar statutes do, in fact, restrict their jurisdiction.[25]  However, those courts have relied on reasoning that is not applicable to AS 34.40.110(k).  First, "[s]ome state courts have applied state-law distinctions between local and transitory actions to make discretionary decisions whether to stay or dismiss an action in favor of another forum."[26]  *Tennessee Coal* established that "a state cannot create a *transitory* cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction"[27] — which suggests that states are not barred from asserting exclusive jurisdiction when the cause of action is *local* rather than transitory.  However, AS 34.40.110(k) grants Alaska courts exclusive jurisdiction over fraudulent transfer actions against Alaska trusts, and fraudulent transfer actions are transitory actions.[28]

---

[24]    (...continued)

*Jurisdiction*, 1 STAN. J. COMPLEX LITIG. 51(2012).  *See also, e.g.*, Del. Code Ann. tit. 6, § 18-305(f) (West 2017); Del. Code Ann. tit. 8, §§ 145(k), 220(c) (West 2017); Del. Code Ann. tit. 12, § 3572(a) (West 2017); Ga. Code Ann. § 33-36-6(g) (West 2017); La. Stat. Ann. § 22:2058(C)(1) (2017) (insurance guaranty funds); S.D. Codified Laws § 55-16-13 (2018); Utah Code Ann. § 25-6-502(11)(b) (West 2017) (asset protection trusts).

[25]    *See, e.g.*, *Carbone v. Nxegen Holdings, Inc.*, No. HHDCV136039761S, 2013 WL 5781103, at *4-5 (Conn. Super., Oct. 3, 2013); *Wilson v. Celestial Greetings, Inc.*, 896 S.W.2d 759, 761-62  (Mo. App. 1995); *State ex rel. U. S. Fid. & Guar. Co. v. Mehan*, 581 S.W.2d 837, 840 (Mo. App. 1979); *Foti v. W. Sizzlin Corp.*, No. CH03-862, 2004 WL 2848398, at *1-2 (Va. Cir. Feb. 6, 2004).

[26]    Winship, *supra* note 24, at 75; *see also Wilson*, 896 S.W.2d at 761; *Mehan*, 581 S.W.2d at 838-39.

[27]    *Tenn. Coal*, 233 U.S. at 360 (emphasis added).

[28]    *See supra* note 20.

Other courts have declined to hear cases on the basis of an exclusive jurisdiction provision without addressing the *Tennessee Coal* rule.[29] One of these — a Virginia court — elected to respect an assertion of exclusive jurisdiction because "comity suggests that limitations one state's legislature places on its own laws be universally acknowledged."[30] But comity is not a legal rule; rather it is "a principle under which the courts of one state give effect to the laws of another state . . . out of deference or respect."[31] In other words, while courts may elect to follow a statute like AS 34.40.110 out of comity, they are not compelled to do so.[32] Furthermore, AS 34.40.110 is more than a "limitation[] [Alaska's] legislature place[d] on its own laws"[33] — it purports to deprive other states of jurisdiction over *all* fraudulent transfer actions concerning Alaska trusts, even those based on causes of action arising under that state's own law.

Tangwall directs our attention to several Delaware statutes that purport to grant the Delaware Court of Chancery exclusive jurisdiction over certain suits,[34] and he correctly asserts that some state courts have concluded that these statutes limit their jurisdiction.[35] In 2014, however — following these decisions — the Delaware Court of

---

[29] *See e.g., Carbone*, 2013 WL 5781103, at *4.

[30] *Foti*, 2004 WL 2848398, at *1.

[31] 16A AM. JUR. 2D *Constitutional Law* § 224 (2017).

[32] *See Marine Midland Bank v. United Mo. Bank*, 643 N.Y.S.2d 528, 531 (N.Y. App. Div. 1996) ("Comity does not require or suggest that the courts of this State should surrender their interest in adjudicating disputes . . . .").

[33] *Foti*, 2004 WL 2848398, at *1.

[34] *See supra* note 24.

[35] *See Carbone v. Nxegen Holdings, Inc.*, No. HHDCV136039761S, 2013 WL

(continued...)

Chancery reached the opposite conclusion. In *IMO Daniel Kloiber Dynasty Trust*,[36] the court noted that "courts outside of Delaware are divided as to whether Delaware can establish an exclusive forum for certain state law claims."[37] Citing *Tennessee Coal*, it sided with those courts[38] that had "declined to interpret the exclusive jurisdiction language in Delaware's statutes as precluding them from hearing a case,"[39] reasoning that "Delaware . . . cannot unilaterally preclude a sister state from hearing claims under [that state's] law."[40]

We agree with the Court of Chancery and with those courts that have reached similar conclusions.[41] The basic principle articulated in *Tennessee Coal* has not changed in the last century.[42] As applied to this case, it means that AS 34.40.110(k)'s

---

[35]      (...continued)
5781103, at *4-5 (Conn. Super., Oct. 3, 2013); *Wilson v. Celestial Greetings, Inc.*, 896 S.W.2d 759, 761-62 (Mo. App. 1995); *Foti*, 2004 WL 2848398, at *1.

[36]      98 A.3d 924 (Del. Ch. 2014).

[37]      *Id.* at 940 n.6.

[38]      *Id.* at 940.

[39]      *Id.*

[40]      *Id*. at 939; *see also id*. at 939 n.4. All of the cases that Tangwall cites were decided before *Kloiber*.

[41]      *See, e.g.*, *Anderson v. Children's Corner, Inc.*, No. CV106011812S, 2011 WL 925442, at *3 (Conn. Super., Feb. 15, 2011); *Rudebeck v. Paulson*, 612 N.W.2d 450, 454-55 (Minn. App. 2000); *Sachs v. Adeli*, 804 N.Y.S.2d 731, 733 (N.Y. App. Div. 2005).

[42]      *See Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (quoting *Tennessee Coal* in a more recent Supreme Court opinion); *see also* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 91 (AM. LAW INST. 1971) ("A State may entertain an action even
(continued...)

assertion of exclusive jurisdiction does not render a fraudulent transfer judgment against an Alaska trust from a Montana court void for lack of subject matter jurisdiction. We therefore cannot grant Tangwall the relief that he seeks from the Montana judgment.

### C. Alaska Statute 34.40.110(k) Cannot Limit The Scope Of A Federal Court's Jurisdiction.

Nor can we grant Tangwall relief from the federal judgment. While *Tennessee Coal* addressed only a state's ability to restrict the jurisdiction of its sister states, a more recent United States Supreme Court case confirmed that the *Tennessee Coal* rule also applies to claims of exclusive jurisdiction asserted against *federal* courts. In *Marshall v. Marshall*, the United States Supreme Court considered whether Texas probate courts could retain exclusive jurisdiction over a transitory tort arising under Texas law.[43] Relying on *Tennessee Coal*, the Court concluded that they could not: state efforts to limit federal jurisdiction were invalid, "even though [the state] created the right of action" giving rise to the suit.[44]

---

[42]    (...continued)
though the state of the applicable law has provided that action on the particular claim shall not be brought outside its territory.").

[43]    *Marshall*, 547 U.S. at 300-05. Specifically, the Court analyzed a Texas probate court's ruling that Texas probate courts retained exclusive jurisdiction. The basis for the probate court's ruling is not discussed in *Marshall*, but the Ninth Circuit opinion from which appeal was taken suggests that the probate court relied on a statute with an exclusive jurisdiction provision. *See In re Marshall*, 392 F.3d 1118, 1136 (9th Cir. 2004) ("[A]ny cause of action appertaining to estates or incident to an estate shall be brought in a statutory probate court . . . ." (alteration in original) (quoting Tex. Prob. Code Ann. § 5A(b)).

[44]    *Marshall*, 547 U.S. at 314 (quoting *Tenn. Coal, Iron, & R.R. Co. v. George*, 233 U.S. 354, 360 (1914)). The Court's reasoning in *Marshall* echoed a similar holding in *Railway Co. v. Whitton's Administrator*, 80 U.S. (1 Wall.) 270 (1871). The *Whitton*

(continued...)

*Marshall* — like *Tennessee Coal* — is not perfectly analogous to this case; the *Marshall* Court concluded that Texas could not retain exclusive jurisdiction over suits based on a tort cause of action arising under Texas law,[45] whereas the federal bankruptcy court's judgment against Tangwall was based on a cause of action arising under *federal* law.[46] But just as *Tennessee Coal* should control whether AS 34.40.110(k) can restrict state court jurisdiction, *Marshall* controls whether AS 34.40.110(k) can restrict federal court jurisdiction. The fact that a state cannot restrict federal courts' jurisdiction "even though [the state] created the right of action"[47] implies that a state also cannot restrict federal jurisdiction over suits based on a cause of action it did *not* create.

Tangwall notes that some federal courts have concluded that state law "exclusive jurisdiction" provisions do in fact deprive them of jurisdiction.[48] But only one of the cases he cites is reported, and none address *Marshall* or *Tennessee Coal*. And other federal courts have reached the opposite conclusion. The Sixth Circuit, for instance, has held that "a state may not deprive a federal court of jurisdiction merely by

---

[44]     (...continued)
court held that when a federal court has jurisdiction over a right of action, that right of action cannot "be withdrawn from the cognizance of [a] Federal court by any provision of State legislation that it shall only be enforced in a State court." *Id.* at 286.

[45]     *Marshall*, 547 U.S. at 314.

[46]     *See* 11 U.S.C. § 548(a)(1)(A) (2012).

[47]     *Marshall*, 547 U.S. at 314 (quoting *Tenn. Coal*, 233 U.S. at 360).

[48]     *See Lynch v. Basinger*, No. 12-637, 2012 WL 6213781, at *5 (D.N.J. Dec. 12, 2012); *Yale S. Corp. v. Eclipse Servs., Inc.*, No. 10-CV-0337-CVE-FHM, 2010 WL 2854687, at *3-4 (N.D. Okla. July 19, 2010); *Reserve Sols. Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 288-89 (S.D.N.Y. 2006).

declaring in a statute that it holds exclusive jurisdiction."[49]  Similarly, the Ninth Circuit has held that "states . . . 'have no power to enlarge or contract the federal jurisdiction.' "[50]  The reasoning in these latter cases is both persuasive and consistent with the approach set out in *Marshall*.

Lastly, we note that if AS 34.40.110(k) were "interpreted to deny parties access to the [federal courts] without [those courts'] consent," the statute "might well run afoul of the Supremacy Clause."[51]  The *Marshall* court did not invoke the preemption doctrine or cite the Supremacy Clause from which the doctrine is derived; it relied instead  on the general principle that the jurisdiction of a sovereign nation's courts "is determined 'by the law of the court's creation.' "[52]  However, several federal courts have concluded that it is the Supremacy Clause that ultimately precludes state courts from

---

[49]     *Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 917 (6th Cir. 2006).

[50]     *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) (quoting *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961)); *see also Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981) (same).

[51]     *Allstate Ins. Co. v. Gammon*, 838 F.2d 73, 77 n.7 (3d Cir. 1988) (analyzing Pennsylvania insurance statute with similar provision).

[52]     *Marshall*, 547 U.S. at 314 (quoting *Tenn. Coal*, 233 U.S. at 360).  For similar approaches, *see Ry. Co. v. Whitton's Adm'r.*, 80 U.S. (1 Wall.) 270, 286 (1871), and *Markham*, 292 F.2d at 716.

limiting federal jurisdiction.[53] And in *Kloiber*, the Delaware Chancery Court reached the same conclusion when contemplating a situation much like the one before us now:

> Assume that [a] non-Delawarean sued [a] Delaware corporation in federal district court and sought to be indemnified for $1 million [as permitted under Section 145 of Delaware's General Corporation Law]. Any challenge to the federal court's jurisdiction based on Section 145(k) conferring exclusive jurisdiction on the Court of Chancery would fail, defeated by the federal diversity statute, 28 U.S.C. § 1331, and the Supremacy Clause of the United States Constitution.[54]

This case implicates a different federal jurisdictional statute, but our reasoning is much the same. 28 U.S.C. § 1334(a) grants federal district courts "original and exclusive jurisdiction of all cases under title 11."[55] 11 U.S.C. § 548(a)(1)(A), the federal bankruptcy fraudulent conveyance statute, permits trustees to avoid fraudulent transfers. Because AS 34.40.110(k) purports to grant Alaska courts exclusive jurisdiction over all fraudulent transfer claims against Alaska trusts, and because 28 U.S.C. § 1334(a) grants federal courts jurisdiction over some of these claims, the Alaska law "conflicts with . . . federal law to the extent that . . . it is impossible to comply

---

[53]     *See, e.g.*, *Allstate*, 838 F.2d at 77 n.7; *Begay*, 682 F.2d at 1315; *U.S. ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2013 WL 5924962, at *4 (E.D. Pa. Nov. 5, 2013). Under federal preemption doctrine — which derives from the Supremacy Clause — state law is preempted when it "conflicts with . . . federal law to the extent that (a) it is impossible to comply simultaneously with both or (b) the state regulation obstructs the execution of the purpose of the federal regulation." *Interior Reg'l Hous. Auth. v. James*, 989 P.2d 145, 149 (Alaska 1999) (quoting *In re J.R.B.*, 715 P.2d 1170, 1172 (Alaska 1986)).

[54]     *IMO Daniel Kloiber Dynasty Trust*, 98 A.3d 924, 939 (Del. Ch. 2014).

[55]     28 U.S.C. § 157 allows district courts to refer title 11 cases and proceedings to bankruptcy court. *See Stern v. Marshall*, 564 U.S. 462, 474 (2011).

simultaneously with both."[56] We therefore cannot grant Tangwall the relief that he seeks from the federal judgment.

## IV.    CONCLUSION

For the reasons we have explained above, we AFFIRM the judgment of the superior court.

---

[56]    *Interior Reg'l Hous. Auth.*, 949 P.2d at 149 (quoting *J.R.B.*, 715 P.2d at 1172).